FILED DATE: 12/13/2019 2:54 PM 2019L013635

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Osvaldo Valdez

(Name all parties)

v.

City of Chicago, Eddie Johnson, et al.

Case No. 2019 L 013635

☑ **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant: City of Chicago, City Hall, 121 N. LaSalle Street
Chicago, IL 60602

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons,** not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

19 DEC 23 PM 1:25
OFFICE OF THE
CITY CLERK
RECEIVED

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

**EXHIBIT A**

Summons - Alias Summons          (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 39203

Witness: _____

Atty Name: Luke A. Casson

12/13/2019 2:54 PM DOROTHY BROWN

Atty. for: Plaintiff

DOROTHY BROWN, Clerk of Court

Address: 661 West Lake Street, Suite 2N

City: Chicago

Date of Service:

State: IL   Zip: 60661

(To be inserted by officer on copy left with Defendant or other person)

Telephone: 312-935-2000

Primary Email: lcasson@andreou-casson.com

FILED DATE: 12/13/2019 2:54 PM 2019L013635

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

FILED DATE: 12/13/2019 2:54 PM  2019L013635

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

FILED
12/12/2019 2:46 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2019L013635

FILED DATE: 12/12/2019 2:46 PM   2019L013635

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| OSVALDO VALDEZ )<br><br>               Plaintiff,    )<br>v.                          )<br>                            )<br>CITY OF CHICAGO, a local unit of )<br>government, EDDIE JOHNSON, in )<br>his individual capacity, RAHM )<br>EMANUEL, in his individual )<br>capacity, )<br>                            )`<br>               Defendants.   )<br>                            ) | **Case No.  2019 L 013635**<br><br>**Judge**<br><br><br>**Jury Trial Demanded** |

**FIRST AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff, OSVALDO VALDEZ, by his attorneys, ANDREOU & CASSON, LTD., and complaining of the Defendants, THE CITY OF CHICAGO, a unit of local government and indemnitor for employees and agents of the City of CHICAGO City, Rahm Emmanuel, in his individual capacity and in his capacity as Mayor of the City of Chicago, and Eddie JOHNSON, in his individual capacity and as the Superintendent of Police for the City of Chicago, for his First Amended Complaint at Law, states as follows:

**INTRODUCTION**

The Plaintiff, OSVALDO VALDEZ, seeks redress for actions taken against him by the Defendants related to his exercise of his rights under the 1st and 14th Amendments to the U.S. Constitution, and Article I, Section 2 of the Illinois Constitution with respect to speech and for race discrimination in promotions within the Chicago Police Department.

**JURISDICTION AND VENUE**

The jurisdiction of this Court is invoked pursuant to the 735 ILCS 5/2-209, the Civil Rights Act, 42 U.S.C. §1983 and §1985, and 28 U.S.C. §1331 and §1343(a).  Venue of this

FILED DATE: 12/12/2019 2:46 PM   2019L013635

Complaint has been properly laid in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101, as upon information and belief, the City of Chicago is a municipal corporation located in the County of Cook, and all other defendants to this complaint reside within the County of Cook and are citizens of the State of Illinois. All of the actions alleged herein occurred within the County of Cook, State of Illinois.

## PARTIES

1.  The Plaintiff, OSVALDO VALDEZ, is an employee of the City of CHICAGO and a resident of Cook County, Illinois.

2.  Defendant CITY OF CHICAGO, Illinois is a municipal corporation incorporated under the laws of the State of Illinois pursuant to the Illinois Municipal Code.

3.  At all relevant times, Defendant CITY OF CHICAGO, Illinois has been continuously engaged in an industry affecting commerce.

4.  At all times relevant to this complaint and currently, Defendant RAHM EMMANUEL served in the elected position of Mayor of CHICAGO, Illinois.

5.  At all times relevant to this complaint, Defendant EDDIE JOHNSON, was the Police Superintendent of the CITY OF CHICAGO Police Department.

## FACTS COMMON TO ALL COUNTS

6.  Plaintiff was hired by the CITY OF CHICAGO as a police officer with the Chicago Police Department ("CPD").

7.  The Plaintiff is a Latino male.

8.  In 2012, Plaintiff was a Lieutenant of Detective of the CPD in Area Central.

9.  The position of Detective of the CPD is a not a political position.

2

FILED DATE: 12/12/2019 2:46 PM   2019.013635

10. Defendant EMMANUEL, ran for election of Mayor of the CITY OF CHICAGO in 2011 and 2015.

11. In 2019, Lori Lightfoot was elected Mayor of the City of Chicago.

12. Although there was a change in administration of the City of Chicago, Defendant JOHNSON remained in his position as Superintendent.

13. On October 20, 2014, Laquan McDonald was shot 16 times by Chicago Police Officer (CPD) Jason VanDyke.

14.  In the aftermath of that tragic killing, an investigation ensued which involved the controversial cover up of police misconduct of Officer VanDyke, members of the Chicago Police Department, and Defendants JOHNSON and Emanuel.

15. During the controversy involving the murder of Mr. McDonald and the ensuing cover up, the Plaintiff was called to attend the scene of the crime to assist with the investigation into Officer VanDyke's conduct.

16. The Plaintiff was summoned to a meeting with Defendants JOHNSON to discuss the Plaintiff's observations and results of his investigation of the McDonald shooting.

17. During the meeting, the Plaintiff advised that Mr. VanDyke was trained by the City of Chicago Police Department in such a way that such a shooting was bound to occur. The Plaintiff believed that the CITY OF CHICAGO training methods were illegal and not in conformity with standards set by law.

18. The Plaintiff also stated at this same meeting that all videos of the McDonald murder should be released. The Defendants refused to respond to the Plaintiff's warning.

3

FILED DATE: 12/12/2019 2:46 PM   2019L013635

19.  Subsequently, in February, 2015, after the meeting with JOHNSON, the Plaintiff sent an email to Eugene Roy and John Escalante, reiterating that there should be a complete and accurate release of the entire McDonald investigation.

20.  After the murder of Mr. McDonald, the City of Chicago and the Individual Defendants embarked upon an elaborate scheme to cover up the conduct of Mr. Van Dyke and the City of Chicago.

21.  On April 13, 2015, Federal and county prosecutors confirmed that they were investigating the October fatal shooting by a Chicago police officer of teenager Laquan McDonald.

22.  On April 15, 2015, the Chicago City Council approved a $5 million settlement with Laquan McDonald's family.

23.  On November 18, 2015, the Judge in the McDonald case, began considering release of Laquan McDonald shooting video: The settlement with the city included an agreement that the video not be released. Freelance journalist Brandon Smith filed a lawsuit to have that video released.

24.  On November 19, 2015, the McDonald police shooting video was ordered to be released: A Cook County judge ruled the Chicago Police Department must release the graphic dashboard video, and criticized States Attorney Anita Alvarez regarding the handling of police shooting cases.

25.  On November 20, 2015, Alvarez announced that she would not block release of graphic police shooting video.

4

26. On November 23, 2015, Mayor Rahm EMANUEL met with community leaders ahead of the expected release of a dashcam video that showed a Chicago police officer fatally shooting 17-year-old Laquan McDonald.

27. On November 24, 2015, Mr.VanDyke was charged with 1st degree murder in the Laquan McDonald shooting after CPD dash cam video shows police shooting Laquan McDonald.

28. On November 25, 2015, protests ensued upon the release of the dashcam video.

29. On November 29, 2015, Protest organizers begin 16 days of demonstrations for number of times teen was shot by officer VanDyke.

30. On December 1, 2015, Garry McCarthy was fired as Chicago police superintendent.

31. Mayor EMANUEL created the Police Accountability Task Force designed to further cover up the conduct of the Defendants.

32. On December 4, 2015, new video of Laquan McDonald police shooting was released by the CITY OF CHICAGO showing conflicts with police reports of the incident.

33. On December 8, 2015, Independent Police Review Authority directed the Inspector General to investigate other officers in Laquan McDonald case

34. On December 16, 2015, Officer Jason Van Dyke indicted on 6 murder counts in Laquan McDonald shooting

35. On December 24, 2015, the Laquan McDonald police radio calls were released

FILED DATE: 12/12/2019 2:46 PM    2019L013635

36.     On December 31, 2015, Laquan McDonald shooting emails were released by city and show that the City attempted to soften the reaction to Laquan McDonald video

37.     On January 5, 2016, new dash-cam video from night of Laquan McDonald shooting was released.

38.     On January 6, 2016, Chicago police officers were disciplined over missing audio on dash-cam videos

39.     On January 15, 2016, nearly 2 dozen officers called to testify about McDonald shooting, including the Plaintiff.

40.     On January 22, 2016, Officers who witnessed Laquan McDonald shooting put on desk duty.

41.     On April 12, 2016, the Task force urged CPD to acknowledge racism in a scathing report revealing that the Chicago Police Department was plagued by racism and lack of accountability.

42.     On May 13, 2016, Mayor EMANUEL revealed plan to replace IPRA with civilian agency, headed by now Mayor Lightfoot.

43.     In July, 2016, the Plaintiff provided a statement pursuant to legal process in which he stated that the training provided by the CPD was the primary cause of the death of Laquan McDonald.

44.     On August 18, 2016, JOHNSON fired 7 officers in Laquan McDonald shooting.

45.     On September 29, 2016, it was revealed that the Police pressured Laquan McDonald shooting witness to testify falsely.

FILED DATE: 12/12/2019 2:46 PM   2019L013635

46.    On November 8, 2016, Kim Foxx defeated Anita Alvarez to win Cook County
        State's Attorney race.

47.    On January 13, 2017, the US Department of Justice report reported that CPD
        engages in a pattern of using excessive force

48.    On January 19, 2017, four Chicago police officers who were at the scene of the
        fatal shooting of Laquan McDonald are suspended for failing to ensure the
        dashboard cameras in their squad cars were operating properly.

49.    On May 17, 2017, CPD adopted a new 'use of force' policy

50.    On June 27, 2017, 3 Chicago PD officers indicted in relation to Laquan
        McDonald shooting

51.    On April 26, 2018, a Cook County Judge ordered the release of documents in
        Laquan McDonald murder case

52.    On April 28, 2018, a Cook County Judge orders release of more sealed documents
        in Jason Van Dyke police shooting case

53.    On May 10, 2018, more than a dozen sealed documents released in Van Dyke
        murder trial

54.    On May 23, 2018, the Illinois Supreme Court orders documents in Van Dyke case
        be made public.

55.    On September 5, 2018, Jason Van Dyke tried for murder.

56.    On October 5, 2018, a jury finds Jason Van Dyke guilty of second-degree murder,
        16 counts of aggravated battery

57.    On November 27, 2018, trial begins for CPD officers accused of cover-up in
        Laquan McDonald shooting

7

FILED DATE: 12/12/2019 2:46 PM   2019L013635

58.   The Plaintiff is highly qualified for promotion to Commander. Since
      approximately 2015, the Plaintiff has been performing the duties of a Commander
      in spite of being repeatedly denied the opportunity for promotion.

59.   On Wednesday May 8, 2019 at approximately 1130 hours Supt. JOHNSON
      addressed the Class of Lieutenants in Captains training.

60.   In addition to the 9 Lieutenants in the class it was attended by Captain Mike
      Murphy, Deputy Kevin JOHNSON, and Lt. Dan O'Connor.

61.   JOHNSON addressed the class and informed us that he believed that most of us
      will be promoted.

62.   During his talk, JOHNSON mentioned the Laquan McDonald case.  He indicated
      that he hoped we understood that he said what he had to say about it so he could
      help avoid riots.

63.   He asked the class if we knew why Chicago did not experience riots during the
      recent controversial incidents and he followed up by saying it was because of
      relationships.  He stated that the relationships he was referring to were those with
      the community leadership and activists.  He said that we (the department) had to
      move on.

64.   JOHNSON also mentioned the Paul O'Neil shooting case and asked the class,
      when was the last time that the Department Policy allowed for shooting into a
      vehicle.

65.   The Plaintiff immediately began to feel as if he was directing his comments to
      him.  The Plaintiff was the only person in the class that was on both scenes and

was the only Lieutenant in the class that has investigated a Police Involved

Shooting as a Lieutenant.

66. The Plaintiff was not the lead investigating supervisor in either case and

JOHNSON was well aware of that fact.

67. JOHNSON'S comments were in response to the leak of the Plaintiff's deposition

and the he labeled the Plaintiff as a liar or incapable of understanding statements

and comments made by others.

68. JOHNSON also stated that he does not depend on resumes when considering

whom to promote and that he wants to get a "feel" for the candidates.

69. JOHNSON was aware of the meeting regarding Van Dyke's conduct and that the

Plaintiff stated that Van Dyke reacted to the incident as he was trained.

70.  The Plaintiff is the most senior Lieutenant eligible for promotion and has, by far,

the most diverse experience.

71. The Plaintiff has worked as a Lieutenant in the Bureaus of Organized Crime,

Patrol, Detective Division, and the Deployment Operations Center, and is the only

Lieutenant that has held position of a Commanding Officer for units that cover the

entire city or area.

72. On June 17, 2019 three individuals, all non-hispanic, were promoted to Captain.

In October, 2019, a non-hispanic white male was promoted to Captain. On

October 8, 2019, a non-hispanic white male was promoted to Captain.

73. The Plaintiff was passed over for promotion each time because of his race and

nationality and for speaking out on a matter of public concern.

74.  The Plaintiff engaged in constitutionally protected speech under the First Amendment of the U.S. Constitution and Article 1, Section 2 of the Illinois Constitution.

75.  The Plaintiff's speech did not adversely affect the efficient administration of public service and was not an essential function of his job duties.

76.  Defendant, the CITY OF CHICAGO has established a longstanding policy, practice and procedure of retaliating against employees based on the expression of contrary political views and have done so with actual knowledge that such policies violate both the Illinois and U.S. Constitution.

77.  The Individual Defendants are all final policy makers for the purposes of the 1st Amendment to the U.S. Constitution and Article 1, Section 2 of the Illinois Constitution.

78.  At all relevant times to this Complaint at Law, the Plaintiff fully performed to the expectations of his supervisor and employer.

79.  In 2019, the Inspector General for the City of Chicago issued a report detailing the Defendants pattern and practice of systematically denying officers of Latino origin, race and nationality opportunities for promotion.

80.  The Plaintiff has been systematically denied such opportunities for promotion although more qualified on every known metric of performance.

### COUNT I
### INDEMNIFICATION
### (v. The City of Chicago)

81.  The Plaintiff hereby incorporates and realleges the foregoing paragraphs as though set forth and is incorporated by reference.

10

FILED DATE: 12/12/2019 2:46 PM   2019L013635

82.     Pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO is empowered and directed to pay any judgment for compensatory damages (and any associated attorney fees and costs) for which an independently elected City of Chicago official, including but not limited to Defendants RAHM EMMANUEL and EDDIE JOHNSON, acting within the scope of their employment, is found liable.

83.     The acts and/or omissions of Defendants RAHM EMMANUEL and EDDIE JOHNSON, were committed within the scope of their respective employments with the CITY OF CHICAGO.

84.     In the event that a judgment for compensatory damages is entered against Defendants RAHM EMMANUEL, EDDIE JOHNSON, and the CITY OF CHICAGO must pay the judgment as well as the associated attorney fees and costs.

        WHEREFORE, the Plaintiff respectfully requests that Defendant CITY OF CHICAGO be directed and ordered to pay any judgment rendered against individually named officials and employees of the CITY OF CHICAGO.

## COUNT II
## §1983 FIRST AMENDEMENT FREE SPEECH – MONELL LIABILITY
## (v. the CITY OF CHICAGO)

85.     The Plaintiff hereby incorporates and realleges the foregoing paragraphs as though set forth and is incorporated by reference.

86.     Plaintiff engaged in constitutionally protected speech under the First Amendment of the U.S. Constitution spoke subject to legal process.

87.     The Plaintiff's speech did not adversely affect the efficient administration of public service and was not an essential function of his job duties.

11

88.     The Plaintiff's speech was not an expression of a personal matter.

89.     After the Plaintiff's political statements become known, the Defendants took adverse employment action against the Plaintiff in the form of failure to promote.

90.     At the time of the Plaintiff was denied a promotion, the Defendant, CITY OF CHICAGO, either expressly or by acquiescence, adopted a custom or practice of allowing its various employees to make human resource management decisions based upon an employee's exercise of free speech.

91.     The Defendant, CITY OF CHICAGO, adopted an illegal policy of retribution against city employees who openly opposed the Defendants' policies of retaliation based on the exercise of constitutionally protected rights.

92.     The Defendant, CITY OF CHICAGO, affected its policy and custom by employing tactics of discipline, intimidation, demotion, promotion termination against employees of the CITY OF CHICAGO.

93.     The Plaintiff's speech was the reason that the Defendants relied on in its promotion decisions.

94.     The termination of the Plaintiff by the Defendants to this Count violated the Plaintiff's rights of free speech secured to his by the First Amendment to the Constitution of the United States.

95.     The violation of the Plaintiff's constitutional rights by the Defendants to this Count has caused the Plaintiff harm, damages, lost wages and employment benefits, pain and suffering, emotional distress, embarrassment, humiliation and financial crisis.

96.     The Defendants violated the Plaintiff's right to freedom of speech under the First Amendment and his right to Due Process secured by the Fourteenth Amendment to the United States Constitution.

FILED DATE: 12/12/2019 2:46 PM   2019L013635

97.    Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment by retaliating against him speaking out on a matter of public concern, specifically the inadequacy of training within the Chicago Police Department and that the CITY OF CHICAGO'S efforts to suppress the evidence in the McDonald case was illegal and ill-advised.

98.    The statements made by Plaintiff addressed constitutionally protected matters of public concern.

99.    The actions of Defendants in intentionally engaging in discrimination and retaliation against the Plaintiff has caused him great mental anguish, humiliation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

100.   The actions of the Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured under the First and Fourteenth Amendments to the United States Constitution.

WHEREFORE, the Plaintiff respectfully requests:

a)    All wages and benefits, back pay, front pay and future pecuniary damages, injury, mental anguish and distress, and financial hardship Plaintiff would have received but for the retaliation and discrimination, including pre-judgment interest;

b)    An order be entered installing the Plaintiff to the position of Commander and Captain with the CITY OF CHICAGO;

c)    Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

13

d)     Defendants be required to pay prejudgment interest to Plaintiff on these damages;

e)     A declaratory judgment that Defendants' actions violate the Illinois and U.S.
Constitution;

f)     The Court retain jurisdiction of this case until such time as it is assured that the
Defendants have remedied the policies and practices complained of herein and are
determined to be in full compliance with the law;

g)     Punitive damages as allowed by law as against the Individual Defendants;

h)     An award of reasonable attorneys' fees, costs, and litigation expenses; and

i)     Such other relief as the Court may deem just or equitable.

### COUNT III
### §1983 FIRST AMENDEMENT FREE SPEECH
### (v. EMMANUEL, JOHNSON)

101.   The Plaintiff hereby incorporates and realleges the foregoing paragraphs as
       though set forth and is incorporated by reference.

102.   Plaintiff engaged in constitutionally protected speech under the First Amendment
       of the U.S. Constitution when he provided statements under oath and pursuant to
       legal process.

103.   The Plaintiff's speech did not adversely affect the efficient administration of
       public service and was not an essential function of his job duties.

104.   The Plaintiff's speech was compelled by legal process and he was required to
       speak the truth.

FILED DATE: 12/12/2019 2:46 PM   2019L013635

FILED DATE: 12/12/2019 2:46 PM   2019L013635

105.   After the Plaintiff's statements become known, the Defendants took adverse

employment action against the Plaintiff in the form of their refusal to promote the

Plaintiff to the rank of Captain and Commander.

106.   The Plaintiff's speech was the reason that the Defendants relied on when they

refused to promote the Plaintiff.

107.   The adverse action of the Plaintiff by the Defendants to this Count violated the

Plaintiff's rights of free speech and association secured to his by the Constitutions

of Illinois and of the United States.

108.   The violation of the Plaintiff's constitutional rights by the Defendants to this

Count has caused the Plaintiff harm, damages, lost wages and employment

benefits, pain and suffering, emotional distress, embarrassment, humiliation and

financial crisis.

109.   The Defendants violated the Plaintiff's right to freedom of speech under the First

Amendment and his right to Due Process secured by the Fourteenth Amendment

to the United States Constitution.

110.   Defendants intentionally subjected Plaintiff to unequal and discriminatory

treatment by retaliating against him for speaking on a matter of public concern.

111.   The statements made by Plaintiff addressed constitutionally protected matters of

public concern.

112.   The actions of Defendants in intentionally engaging in discrimination and

retaliation against the Plaintiff has caused him great mental anguish, humiliation,

physical and emotional pain and suffering, inconvenience, lost wages and

benefits, future pecuniary losses, and other consequential damages.

113.   The actions of the Defendants were intentional, willful, and malicious and/or in

deliberate indifference for Plaintiff's rights as secured under the First and

Fourteenth Amendment to the United States Constitution.

WHEREFORE, the Plaintiff respectfully requests:

a)      All wages and benefits, back pay, front pay and future pecuniary damages, injury, mental anguish and distress, and financial hardship Plaintiff would have received but for the retaliation and discrimination, including pre-judgment interest;

b)      An order be entered assigning the Plaintiff to the position of Captain and Commander with the CITY OF CHICAGO;

c)      Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

d)      Defendants be required to pay prejudgment interest to Plaintiff on these damages;

e)      A declaratory judgment that Defendants' actions violate the First and Fourteenth Amendments to the United States Constitution;

f)      The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g)      Punitive damages as allowed by law as against the Individual Defendants;

h)      An award of reasonable attorneys' fees, costs, and litigation expenses; and

i)      Such other relief as the Court may deem just or equitable.

### COUNT IV
### 42 U.S.C. Section 1983
### RACE DISCRIMINATION
### (City of Chicago, Emanuel and JOHNSON)

114.   The Plaintiff hereby incorporates and realleges the foregoing paragraphs as

though set forth and is incorporated by reference.

115.   The conduct of Defendant violates state and federal law in that Defendant

discriminated against the Plaintiff, who is an Hispanic male, with respect to

FILED DATE: 12/12/2019 2:46 PM   2019L013635

Plaintiff's employment, by failing to promote him as a Captain and Commander, as alleged.

116. At all times relevant to this Complaint, the Plaintiff was employed by CITY OF CHICAGO as a Lieutenant.

117. At all times the Plaintiff's job performance has met the legitimate expectations and requirements of his job description and is more qualified for promotion to Captain and Commander than similarly situated non-Hispanic employees.

118. Plaintiff's job performance has in fact consistently exceeded the legitimate expectations and requirements of his job.

119. The Plaintiff experienced racial and nationality discrimination in his employment and the Defendants have refused to address its unlawful employment practices.

120. The aforementioned conduct of Defendants has resulted in damages to Plaintiff including, but not limited to loss of pay, emotional anguish, humiliation, embarrassment, and pain and suffering.

WHEREFORE, the Plaintiff respectfully requests:

a)      All wages and benefits, back pay, front pay and future pecuniary damages, injury, mental anguish and distress, and financial hardship Plaintiff would have received but for the retaliation and discrimination, including pre-judgment interest;

b)      Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

c)     Defendants be required to pay prejudgment interest to Plaintiff on these damages;

d)     A declaratory judgment that Defendants' actions violate the First and Fourteenth Amendments to the United States Constitution;

e)     The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

f)     Punitive damages as allowed by law as against the Individual Defendants;

g)     An award of reasonable attorneys' fees, costs, and litigation expenses; and

h)     Such other relief as the Court may deem just or equitable.

## COUNT V
## ILLINOIS CONSTITUTION
### (v. all Individual Defendants)

121.   Plaintiff restates and realleges by reference the foregoing paragraphs as though fully set forth herein.

122.   Plaintiff engaged in constitutionally protected speech and association under the Article I, Section 2 of the Illinois Constitution when he made statements subject to legal process and spoke out on matters of public concern.

123.   The Plaintiff's speech did not adversely affect the efficient administration of public service and was not an essential function of his job duties.

124.   The Plaintiff's speech was not an expression of a personal matter.

18

FILED DATE: 12/12/2019 2:46 PM   2019L013635

125.   After the Plaintiff's statements became known, the Defendants took adverse

employment action against the Plaintiff in the form of failure to promote.

126.   The Plaintiff's speech was the reason that the Defendants relied on when they

took adverse action on the Plaintiff.

127.   The Defendants to this Count took adverse employment action against the

Plaintiff's employment under color of state law.

128.   The termination of the Plaintiff by the Defendants to this Count violated the

Plaintiff's rights of free speech and association secured by Article I, Section 2 of

the Constitution of the State of Illinois.

129.   The violation of the Plaintiff's constitutional rights by the Defendants to this

Count has caused the Plaintiff harm, damages, lost wages and employment

benefits, pain and suffering, emotional distress, embarrassment, humiliation and

financial crisis.

130.   The Defendants violated the Plaintiff's right to freedom of speech under Article 1,

Section 2 of the Illinois Constitution.

131.   Defendants intentionally subjected Plaintiff to unequal and discriminatory

treatment by retaliating against him for speaking publicly about matters of a

public concern.

132.   The statements made by Plaintiff addressed constitutionally protected matters of

public concern.

133.   The actions of Defendants in intentionally engaging in discrimination and

retaliation against the Plaintiff has caused him great mental anguish, humiliation,

FILED DATE: 12/12/2019 2:46 PM   2019L013635

physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

134. The actions of the Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured under Article I, Section 2 of the Illinois Constitution.

WHEREFORE, the Plaintiff respectfully requests:

a) All wages and benefits, back pay, front pay and future pecuniary damages, injury, mental anguish and distress, and financial hardship Plaintiff would have received but for the retaliation and discrimination, including pre-judgment interest;

b) An order be entered installing the Plaintiff to his the position of Captain and Commander with the CITY OF CHICAGO;

c) Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

d) Defendants be required to pay prejudgment interest to Plaintiff on these damages;

e) A declaratory judgment that Defendants' actions violate Article I, Section 2 of the Illinois Constitution;

f) The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g) Punitive damages as allowed by law as against the Defendants.

h) An award of reasonable attorneys' fees, costs, and litigation expenses; and

i) Such other relief as the Court may deem just or equitable.

FILED DATE: 12/12/2019 2:46 PM  2019L013635

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial on all issues.

Respectfully submitted,

ANDREOU & CASSON, LTD.

By: */s/ Luke A. Casson*
Luke A. Casson

Luke A. Casson 6257881
Andreou & Casson, Ltd.
Attorneys for Plaintiff
661 West Lake Street, Suite 2N
Chicago, Illinois 60661
312.935.2000/ 312.935.2001
lcasson@andreou-casson.com

21