IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OSVALDO VALDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20 C 388 |
| ) | |
| CITY OF CHICAGO, a local unit of ) | Judge Joan H. Lefkow |
| government; EDDIE JOHNSON, in his ) | |
| official and individual capacities; RAHM ) | |
| EMANUEL, in his individual and official ) | |
| capacities, ) | |
| ) | |
| Defendants.[1] | |

**OPINION AND ORDER**

This is a civil action for monetary and injunctive relief brought under 42 U.S.C. § 1983. Osvaldo Valdez claims that the former Superintendent of Police for the City of Chicago, Eddie Johnson, and former Mayor Rahm Emanuel discriminated against him based on his Latino "race" (Count IV) and retaliated against him by repeatedly failing to promote him because he had spoken on issues of public concern (Count III). He rests his retaliation claims on the First Amendment and his race discrimination claim on the Equal Protection Clause of the Fourteenth

---

[1] The caption of the First Amended Complaint names Johnson and Emanuel only in their individual capacities. Valdez alleges in the first amended complaint, however, that they are sued in both their individual and official capacities. He then recites in his memorandum in response to the pending motion that they are sued in their individual capacities. Because the City concedes these defendants are entitled to indemnification, the distinction makes no difference. As such, the court considers only individual capacity claims in this decision.

Valdez includes Steven Patton and John Escalante as defendants in the caption of some filings in this case, including the response memorandum. These individuals are not named as defendants in the first amended complaint and are not treated as defendants in this decision.

Amendment. He seeks against the City indemnification of the individual defendants (Count I) and direct liability under *Monell* (Count II).[2]

All defendants have moved to dismiss. For the reasons stated below, the motion to dismiss is granted in part and denied in part.[3]

## BACKGROUND[4]

**I.    Valdez's Statements About McDonald Shooting**

On October 20, 2014, Jason Van Dyke, while on duty as a Chicago police officer, fatally shot a young man, Laquan McDonald. Osvaldo Valdez, a lieutenant of detectives, was assigned to assist in the investigation of the scene of the shooting. Later, Eddie Johnson, before becoming superintendent of police,[5] called Valdez into his office to ask for his observations and the results of this investigation. Valdez advised Johnson that the Department had trained Van Dyke "in such

---

[2] The First Amended Complaint alleges violation of parallel provisions of the Illinois Constitution and seeks punitive damages. By not responding to the motion to dismiss these claims on the basis that there is no private right of action under the Illinois Constitution and that the defendants are immune from punitive damages, Valdez has forfeited them. See *Jones* v. *Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Alioto* v. *Town of Lisbon,* 651 F.3d 715, 719 n.1, 721 (7th Cir.2011) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."). Likewise, the City does not dispute its obligation to indemnify the individual defendants.

[3] This court has jurisdiction under 28 U.S.C. § 1331, 1343 and 1367. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

[4] The facts are taken from Valdez's complaint and are presumed true for this motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). For the reasons described in the court's order striking the exhibits to defendants' motion, the court does not consider matters outside the four corners of the complaint and rejects defendant's arguments that some of the allegations of the complaint are untrue. (Dkt. 36.)

[5] At that time, Johnson may have been Chief of Patrol, *see* Wikipedia, *Eddie T. Johnson*, https://en.wikipedia.org/wiki/Eddie_T._Johnson (last accessed July 28, 2020)), and presumably Valdez was under his command. Valdez alleges both that Johnson was superintendent "at all relevant times" and that Garry McCarthy was superintendent until December 2015. (Dkt. 1-1 ¶¶ 5, 30.) Although not alleged, Johnson was named Superintendent in April 2016. See Wikipedia, *Eddie T. Johnson*, https://en.wikipedia.org/wiki/Eddie_T._Johnson (last accessed July 28, 2020). The court infers that "all relevant times" means when the adverse promotion decisions were made, beginning in 2019.

2

a way as the shooting was bound to occur." Valdez told Johnson that all videos of the McDonald shooting should be released to the public. In February 2015, Valdez emailed Eugene Roy and John Escalante, reiterating that everything about the McDonald investigation should be released. (The complaint does not identify who Eugene Roy and John Escalante are, though, as explained below, the court takes judicial notice that they were ranking officials within the Chicago Police Department.) Johnson and Emanuel did not respond to Valdez's warning. Rather, the City, Emanuel and Johnson embarked on an elaborate scheme to cover up Van Dyke's conduct.

The dash-cam video of the McDonald shooting was not released until November 2015, when a Cook County judge so ordered. The video contradicted the initial police reports, prompting public protests, widespread changes to Chicago law enforcement leadership and oversight, and the criminal prosecution of Van Dyke.

In July 2016, Valdez was among many officers called to testify about the McDonald shooting.[6] Valdez testified that faulty training of Van Dyke was the primary cause of the death of Laquan McDonald. Valdez is vague about the proceeding in which he testified but describes it as a "statement" that he gave "pursuant to legal process" and a "deposition."

## II. Failure to Promote Valdez

Valdez is highly qualified for promotion to the rank of commander. Since 2015, in fact, Valdez has been performing the duties of a commander but has repeatedly been passed over for promotion.

During May 2019, Johnson, now Superintendent, addressed a class of nine lieutenants, including Valdez, who were in captain's training. During his remarks, Johnson mentioned the McDonald case and another shooting of Paul O'Neil, which Valdez had also investigated at the

---

[6] Valdez does not allege the forum in which the investigation occurred.

3

scene. Valdez was the only person in the class that had been at both scenes and the only one who had investigated a police-involved shooting as a lieutenant. Valdez took these comments as directed at him because Valdez's deposition had been leaked and Johnson had labeled Valdez as a liar or incapable of understanding comments made by others. Johnson also told the class that he did not depend on resumes when considering promotions but wanted to get a "feel" for the candidates.

In June 2019, three non-Hispanic people were promoted to captain. Two white men were promoted in October 2019. Valdez had more relevant experience than those selected. Valdez believes that Johnson denied him a promotion because of Valdez's statements about the McDonald case. This was a part of a City-wide pattern and practice of penalizing city employees for expressing contrary political views.

In 2019, the Inspector General for the City of Chicago concluded that the Department systematically denies Latinos promotional opportunities. Valdez, a Latino man, claims that he was denied a promotion based on his status as Latino.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences therefrom in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955

(2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); see also *Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

## ANALYSIS

### I.     Claims Against Emanuel

Emanuel argues that Valdez fails to allege any act or omission to support the claims against him. (Dkt. 15 at 6). To state a claim under 42 U.S.C.§ 1983, Valdez must allege "personal involvement in the alleged constitutional deprivation." *Colbert* v. *City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix* v. *Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id; see also Iqbal*, 556 U.S. at 676 ("[T]he plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."); *Vance* v. *Washington*, 97 F.3d 987, 991 (7th Cir.1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Valdez does not allege that Emanuel in any way participated in the police department's failure to promote Valdez. Rather, Valdez claims that Emanuel was involved in a coverup of police misconduct while mayor. (Dkt. 1-1 ¶¶ 10, 14, 26, 42.) Accepting this fact as true, Valdez fails to show that Emanuel had any role in failing to promote Valdez. Indeed, Emanuel was no

longer mayor when Valdez was passed over for promotion in 2019. (*Id.* ¶ 43.) Because the court can conceive of no facts that would implicate Emanuel in the promotion decision, Counts III and IV are dismissed against him with prejudice.

## II.     Claims Against Johnson

### A.     Free Speech Retaliation (Count III)

Section 1983 creates a right of action against state actors who deprive a person of a constitutional right. Valdez claims that Johnson violated his First and Fourteenth Amendment right to free speech by retaliating against him for engaging in protected speech. To succeed on such a claim, Valdez must plausibly allege that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell* v. *Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). Defendants challenge the first and third elements, arguing that Valdez's speech was made as part of his official duties and therefore is not protected. Defendants also argue that Valdez was denied promotion so long after making the speech that he cannot plausibly claim that his speech was a factor in his non-promotion. Because Valdez has sufficiently alleged both elements, the motion to dismiss Count III against Johnson is denied.

#### 1.     Protected Speech

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Chrzanowski* v. *Bianchi*, 725 F.3d 734, 737–38 (7th Cir. 2013) (quoting *Garcetti* v. *Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951 (2006)). "For a public employee's speech to be protected under the First Amendment, the employee must show that (1) he made the speech as a private citizen, (2) the speech addressed a

6

matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Swetlik* v. *Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins* v. *Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). Defendants do not dispute that the McDonald shooting was a matter of public concern. Nor do they claim that the state's interest outweighed Valdez's interest in expression. They challenge only the first requirement, arguing that Valdez spoke as part of his official duties rather than as a private citizen.

To determine whether Valdez spoke as a private citizen or as part of his official duties, the court must make a "practical inquiry" into Valdez's expected job duties. *Kubiak* v. *City of Chicago*, 810 F.3d 476, 481–82 (7th Cir. 2016); *Garcetti*, 547 U.S. at 425. This inquiry is not limited to his job description. *Houskins*, 549 F.3d at 490. Speech is considered part of a public employee's job duties when it is "work product that has been commissioned or created by the employer." *Chrzanowski*, 725 F.3d at 738 (quoting *Garcetti*, 547 U.S. at 422) (quotation marks omitted). When the speech relates to public corruption, courts must be particularly careful in determining whether that speech is a part of the employee's official job duties. *Kristofek* v. *Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (quoting *Lane* v. *Franks*, 573 U.S. 228, 240, 134 S. Ct. 2369 (2014)).

Valdez alleges three distinct acts of speech. First, he criticized the Department's training of officers in his meeting with Johnson after the McDonald investigation. Valdez's speech in that meeting was part of his official duties. *Chrzanowski*, 725 F.3d at 738. He was ordered in his capacity as a detective to investigate a possible crime and, in the same capacity, to report to his supervisor on the results of the investigation. Investigating and reporting on possible crimes were

7

"exactly what the plaintiff was employed to do[.]" *Id*. Under *Garcetti*, the First Amendment does not protect Valdez from discipline for the contents of that statement. 547 U.S. at 421.

Second, Valdez emailed Eugene Roy and John Escalante. Valdez does not specify who these people are, and their employment matters to this analysis. (If they were, for instance, newspaper reporters, it would more strongly suggest that he spoke as a private citizen.) The court takes judicial notice, however, that they were ranking officials within the Chicago Police Department. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *First Midwest Bank* v. *City of Chicago*, 337 F. Supp. 3d 749, 767 (N.D. Ill. 2018) (identifying Eugene Roy as "Former CPD Commander"); *Gonzalez* v. *City of Chicago*, No. 16 C 8012, 2018 WL 1561735, at *3 (N.D. Ill. Mar. 30, 2018) (identifying John Escalante as "Former Interim Superintendent" of the Chicago Police Department).

An employee's speech is not pursuant to official duties merely because he makes a statement about work, at work. *Garcetti*, 547 U.S. at 420–42. "[T]he question is whether [the plaintiff] spoke *pursuant* to [his] official duties—not whether [his] speech *related* to those duties." *Perez-Garcia* v. *Clyde Park Dist.*, No. No. 13 C 1357, 2015 WL 5881341, at *5 (N.D. Ill. Oct. 5, 2015). Nothing in the complaint suggests that Valdez was required to email Roy and Escalante as part of his job duties. To the contrary, it is reasonable to infer that Valdez gratuitously emailed them after being dissatisfied with Johnson's inaction in response to his recommendation to release the dash-cam video. *See id.* ("Employees who voice their

concerns . . . outside the usual chain of command, tend to speak as private citizens rather than employees.").[7]

Third, Valdez testified in July 2016, though it is unclear precisely where. Defendants argue that Valdez's testimony about the shooting occurred in an interview by the Office of the Inspector General ("OIG") in July 2016 and that testifying was an official duty. (Dkt. 15 at 8). Valdez, however, describes his testimony as a "deposition" made "pursuant to legal process." (Dkt. 1-1 ¶¶ 43, 67.) "When a public employee gives testimony pursuant to a subpoena, fulfilling the general obligation of [every] citizen to appear before a grand jury or at trial, he speaks 'as a citizen' for First Amendment purposes." *Chrzanowski*, 725 F.3d at 741 (citations omitted).

Even if one assumes that the forum was the OIG, the court cannot conclude at this stage that giving testimony to the OIG was part of Valdez's official duties. Defendants cite a City ordinance that requires "every employee … of the city … to cooperate with the inspector general in any inquiry undertaken [by the OIG.]." In *Chrzanowski*, the court held that an assistant state's attorney's testimony before a grand jury pursuant to a subpoena was protected speech. His statutory duty to cooperate in the prosecution of all crimes did not make his testimony within his official duties despite the state statute establishing duty to prosecute crimes. The situation here is parallel. Valdez, like all City employees, has a duty to cooperate with the OIG, but this is hardly what he was hired to do. Under *Chrzanowski*, Valdez's speech to the OIG (or at a deposition) was protected by the First Amendment.

Because the First and Fourteenth Amendments at least plausibly protect some of Valdez's statements, the complaint may proceed. *See Morales* v. *Jones*, 494 F.3d 590, 598 (7th Cir. 2007)

---

[7] Valdez does not allege but would have to prove that Johnson was aware of his communication with these officials.

(holding that jury may sustain First Amendment retaliation claim where plaintiff presents evidence of retaliation for "both . . . protected and unprotected speech").

### 2. Retaliation

Defendants also argue that the complaint does not allege facts sufficient to plausibly show retaliation because the adverse employment action occurred too long after Valdez made his statements. Valdez must show that "his purportedly protected speech was at least a motivating factor in the defendants' alleged retaliatory employment actions taken against him." *Kidwell*, 679 F.3d at 965. Defendants highlight that courts often find—even at the pleading stage—that adverse employment actions cannot plausibly be considered retaliation for speech made long beforehand. *See, e.g.*, *Horwitz* v. *Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001) (affirming dismissal of complaint where plaintiff was terminated 18 months after submitting essay to local newspaper). "If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). On the other hand, "no bright-line timing rule can be used to decide whether a retaliation claim is plausible . . . ." *Id.* Instead, the court must evaluate the facts and circumstances of each case. *Id.*

Valdez alleges more than a bare-bones claim of engaging in protected activity and, years later, suffering adverse action. He alleges that Johnson brought up the topic of Valdez's statements at a meeting of lieutenants and captains in May 2019, shortly before denying Valdez a promotion. (Dkt. 1-1 ¶¶ 59–67.) The complaint thus permits the inference that Johnson still had Valdez's statements fresh in his mind when making adverse decisions against Valdez. Further, Valdez could not suffer a failure to promote until a promotion became available; it is therefore

10

plausible that he was punished for his 2015 and 2016 statements at the first opportunity, in 2019. Third, it is plausible that Johnson had a long memory about Valdez's statements, where it is alleged that the controversy surrounding the McDonald shooting resulted in unwanted public opprobrium for and a change of the guard at the Department.

The motion to dismiss Count III against Johnson is therefore denied.

### B. Race Discrimination (Count IV)

In Count IV, Valdez alleges that he was passed over for promotion because of his race, in violation of the Fourteenth Amendment. Under § 1983, a plaintiff must allege purposeful discrimination. *Majeski* v. *Fraternal Order of Police, Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). At the pleading stage, however, "courts should not demand 'too much specificity' in complaints alleging race discrimination." *Taylor* v. *Nunez*, No. 18 C 7844, 2019 WL 5393996, at *1 (N.D. Ill. 2019) (quoting *Freeman* v. *Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (per curiam)). "A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman*, 927 F.3d at 965. Valdez needs only to allege that he was not promoted because of his race. *See id.* ("[Plaintiff] needed only to allege . . . that the District fired him because of his race."); *Bennett* v. *Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say."); *Sroga* v. *City of Chicago*, No. 18 C 1749, 2019 WL 5208870, at *5 (N.D. Ill. Oct. 16, 2019) ("[A]t the pleading stage . . . the requirements in the race-discrimination context are minimal . . . .").

Defendants argue that Valdez does not allege any facts showing that Johnson held a racial bias against Hispanics in support of his race discrimination claim, but this is unnecessary at this stage, during which the plaintiff faces a minimal burden in alleging race discrimination. *See, e.g.*,

11

*Freeman*, 927 F.3d at 635. Valdez goes beyond the minimum, alleging that even though he, a Hispanic man, was the most experienced lieutenant, five non-Hispanic people were instead promoted in 2019. (*Id.* ¶¶ 70–72.) Showing that similarly situated comparators of another race were treated more favorably supports his allegation of race discrimination. *See, e.g.*, *Williams* v. *Seniff*, 342 F.3d 774, 788 & n.13 (7th Cir. 2003) (holding that member of protected class's evidence of different treatment from members of similarly-situated members of unprotected class supports Equal Protection claim of employment discrimination). The motion to dismiss Count IV against Johnson is therefore denied.

### III. Claims Against the City of Chicago

#### A. Direct Liability Under *Monell* (Counts II and IV)

A municipality is not liable under § 1983 simply because it employs a tortfeasor; it must independently take some action to cause the plaintiff's constitutional injuries. *Wilson* v. *Cook Cty.*, 742 F.3d 775, 779 (7th Cir. 2014). "The critical question under *Monell* … is whether a municipal … policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson* v. *Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

The harm that Valdez alleges is being denied promotions that he would otherwise have received. Johnson is alleged to be the agent of the City who made the promotion decisions. Whether or not a City policy, custom, or practice existed, it is Johnson who caused the harm, and the City is liable by way of its indemnity obligation. There is no plausible basis for Johnson to assert qualified immunity, nor can the court conceive of another situation (such as inability to identify a bad actor among multiple actors) where Johnson would not be individually liable but the City would. *See Thomas* v. *Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)

(holding "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict."). A claim under *Monell* therefore adds nothing but duplication.

The City's motion to dismiss Counts II and IV is granted.

## ORDER

The motion to dismiss is granted in part and denied in part. The City's motion is granted as to Counts II, IV, and V. Emanuel's motion is granted (Counts III, IV, and V) and he is dismissed from the case with prejudice. Johnson's motion is denied (Counts III and IV). Count V is dismissed with prejudice. All requests for punitive damages are stricken with prejudice.

Date: July 30, 2020

_____
U.S. District Judge Joan H. Lefkow